Good morning. May it please the Court. Joseph Court on behalf of the Petitioner. A couple of preliminary issues. First is what decision are we entirely reviewing in front of this Court? Second is whether there's jurisdiction. Third, on behalf of the Petitioner and myself, Happy Chinese New Year, considering we're doing a Chinese case. The first issue is what decision are we basically reviewing right now? The immigration judge did do an oral decision and the board did affirm it and adopt it. In doing so, it's almost unclear exactly the extent of the board's decision. However, they do note primarily that they are affirming it based on credibility and they are also imposing a one-year bar to the respondent's claim. Yes. In other words, the I.J. ruled on both, did he not? Yes, he did, Your Honor. And the BIA, citing Bourbonno, affirmed? Correct. Okay. So we can get to the time bar, can we not? Well, I believe we can. Under this Court's precedent in Ramadan, I believe that it's basically a legal issue. What's interesting about this case and what's different than Ramadan, and I believe it's more of an issue of first impression in the circuit, is that the underlying determination is based on a credibility finding, which I will submit as flawed. And putting that aside, the issue is very much a legal issue. The Petitioner entered, at least his date of entry is May 10th, 2002. He filed for asylum on November 22nd, 2002. That's seven months. Seven months is not a year. That's a legal determination. There's no discretion anywhere in there. You count the days, it's less than 365. So to cut to the chase, if we reverse on credibility, then that undermines the time question, sure. Absolutely. And to further that, there's another aspect of legal argument, which is 8 CFR 208.13, subsection A, speaks about the burden of proof for an asylum applicant. An asylum applicant can establish all aspects of an asylum application through credible testimony. And that credible testimony here would include his date of entry within one year. I don't believe there is really an issue of jurisdiction in this case. I know that it was raised. I believe that if the Court has further questions, please indulge me, and I will be happy to answer. As far as I would like to move on to credibility, as far as the credibility determination is, the immigration judge's decision is not a great decision in this case. It's riddled with many mistakes. It's based on a lot of speculation. And, for example, the judge cites the Respondent's or the Petitioner's demeanor in the Winston case, and he states that the Petitioner was — believes he was testifying from script. There's really no concrete examples of that in the record. Well, there's one concrete example, and that's the fake ID card. But that — well, the fake ID card, there is no determination that it's a fake ID card, Your Honor. Those documents were not part of the record. The judge basically excluded them and left them for identification because the Respondent or the Petitioner had failed to authenticate those documents. Now, there is no finding that the ID card is fake. There's no suggestion that the ID card is fake. The only facts in the record are that the ID card was obtained after the Petitioner was in the United States. He indicated in the record that there was a photo he had already taken prior to leaving China, that at the time his locale in China was renewing all of the identification cards, and that his wife obtained the card for him and sent it to him in the United States. There's no other issues. The judge never said that the card was bogus or anything along those lines. You said there was no evidence that he was reading from a script. Wasn't there one spot where he got ahead of himself, got ahead of the question and answered a question that hadn't been asked yet? I think that's subject to interpretation. I don't believe it's, at least it's not supported by substantial evidence. Is that what priors of fact are supposed to do, make that kind of assessment? Well, the way that it happened is it's actually at page 74 of the administrative record. And the conversation goes as follows. It says, during SICK taking interrogation, were you harmed? And he says, yes. Who harmed you? And he says, well, the public security officers. And it says, okay, what kind of harm did you receive? And he said, he asked me to tell him the combination of Zhang Shen and the purpose of our meeting. And then his attorney goes, sir, I asked you how you were harmed, and he answered the question. That is what the IJ is determining is reading from a script. It appears that it's a short, quick, direct examination, and that the petitioner at many points in the hearing was just having a little bit of difficulty understanding what was going on. But I don't think it reflects negatively on his demeanor. And as far as the circuit's precedence is concerned, it really needs to be an individualized determination. And he really didn't he didn't really get ahead of himself on this. He just kind of was explaining exactly what happened. Because if you read further, he said he was harmed because during the time he was harmed, he was under interrogation. And during that interrogation, they were asking him about the church leader and what had transpired and what he knew about the church leader. And when he failed to ask those questions, that's how he was hit. So the answer of how he was hit and how he was harmed is intertwined with whether he was actually with his answer that he actually gave. I don't think it refers to reading the script. The judge is taking it out of context. What do we do with his testimony that wanders around and gets a little different as he's questioned about these Mondays? I mean, that I'm afraid the I.J. didn't like very much. I'm afraid I'm a little bit with the I.J. on that point. That is honestly, out of all the credibility aspects, that's the one that I believe bears the most focus in the instant matter. First of all, reading the transcript carefully, the he was asked, how many times did you report? And he answered specifically, I reported for about over ten times. There's no concrete number given. And he was asked again, over ten times? He says, 12 to 13 times. And then they say 12 to 13 times. He says, well, yes. And it says 12 to 13 times. He says, did the Public Security Bureau pick you up on the times you failed to appear? And he said, yes. There's no specific question asked at this point, exactly how many Mondays are given. The record is incomplete with regards to that. And then at that point, he says, anyways, I reported every Monday, and I do not recall exactly how many times. Over ten, and sometimes I didn't report. The testimony is consistent. I believe when the I.J. is entering his average credibility determination, he almost takes out of context the testimony and starts at the end and goes to the beginning and shifts around the exact places where the testimony was given. But the Petitioner in the instant matter said, it was over ten, it was about 12 to 13, and I didn't report every time. Yes, there's 18 Mondays, but there was not enough testimony elicited to show that there  I also noticed in the Petitioner's testimony that the way he got to the United States was through Canada. They went out the back door of the church, and then they walked across some open fields or some open land somehow, came through to some iron netting, walked a little further, came to some more iron netting, then saw a cow and so on. Is there anything in the record about rows of iron netting at the United States border with Canada between British Columbia and Washington? No. There's nothing in the record regarding that. One way or the other. One way or the other. It just says exactly like you said, Your Honor. It just says he walked. He walked. He walked through some iron netting. They walked to a freeway, I believe he said, where they met a car, and the car drove them directly to Los Angeles. And that's the extent of the record. But this is after going through, I think, two different rows of iron netting and then to a field where he saw a cow. Correct. If possible, Your Honors, I'd like to reserve the remainder of my time. Thank you. Thank you, Mr. Counsel. Thank you. Good morning, Your Honors. Good morning. May it please the Court, my name is Brooke Maurer for the Respondent, the Attorney General. In this case, what we have before us is an adverse credibility determination that holds over everything. The IJ based that on a number of inconsistencies, implausible testimony, lack of supportive evidence, and questionable demeanor. The demeanor, one of which the fact finder is required to observe in this situation, yes, he did feel as though it was scripted. Although, as though Petitioner's counsel did mention the one part where he referred to, he failed to mention the later part on the administrator record on page 77, where counsel had literally stopped the narrative of the Petitioner and rephrased the question and redirected him back to answering the question that was actually asked of him. And there were multiple times where opposing counsel, DHS counsel, objected to the Counsel, would you respond to Mr. Porta's explanations of the Mondays and the ID card? Gladly. I believe that the ID card document came from the tainted. Petitioner admitted when he came in that he used fraudulent documentation in order to travel here into Canada. And the IJ noted that. And he doubted the credibility, of course, of the documentation that he had supplied in the record, first and foremost because it was issued from a country where he allegedly fled based upon his attendance to a house church, and it was issued after he came to the United States of America. And based on his previous acts in China, he found it hard to believe that the Chinese government would reissue a document to somebody who was either wanted or created problems. Well, then, standing by itself with the ID as presented in the hearing, given the fact that it was issued after he got to the United States and his claim is that he would fear persecution in China, is that substantial evidence to support the adverse credibility determination? That alone I would suggest saying no. I mean, it would go to, in the totality, in all the things that they saw together. What about the Mondays? The Mondays Petitioner, I believe Petitioner's counsel read from cages. I fell out where he stopped. I think he said that he had testified that he had gone to 10 and then maybe 12 or 13, and then he testified that he had, in fact, been picked up on the dates that he had failed to do so. On cross-examination, counsel asked, well, you said that you got picked up. He said yes. And then she said, well, now you're telling me that you didn't get picked up and he attended every Monday. So the testimony was inconsistent within itself. He would testify that he appeared all the times, and then he would change his testimony and reflect back to he would miss once in a while and have to clean. Okay. How about that? Would that be enough to establish substantial evidence? I think no. Singularly, I don't think you could look at you could take each and every one of these may not be dynamic enough to cause an adverse credibility finding, but as a whole, when the I.J. looked at this, it wasn't a question of whether the I.J. believed him or, like, was or, you know, he did not believe him. The question that you look at now is whether or not we're required to believe him. And based upon the fraudulent document that came in initially to get him to Canada, coupled with the inconsistent testimony within itself and the Petitioner's demeanor when he was testifying and the potential for more fraudulent documents submitted, I believe that that was enough in totality to render an adverse credibility finding. Yeah. Although I have to say that fraudulent documents upon entry, those are so common with genuine asylum seekers that I don't attach much to that. The rest of it I'm not quarreling with and then the question, what do we do with it? But I have to say, fraudulent documents on entry, we see all the time for legitimate asylum applicants. Yes. Counsel, I have a concern about this case with respect to our jurisdiction. Isn't it correct that the IGA determined that he was time barred in this case? And if that's correct, if this were a clear time bar determination, then we have no jurisdiction. Is that correct? Or am I misunderstanding the law? Well, I mean, based upon, it's unclear. I mean, as far as this was based on, he brought up Ramadan previously and this is an adverse credibility finding solely on the credibility of the petitioner. And based upon that, I believe that there is no case law that completely covers this, so therefore it's without jurisdiction. Well, if this was strictly a time bar and the IJ determined that the petition was barred, the BIA affirmed, would we or would we not have jurisdiction here to review that? Isn't that one of the elements that we have no jurisdiction to review? And the government's position in this was that there was no jurisdiction to review. But that's such a tricky question because it appears in this case that the IJ's time bar finding is totally based upon his adverse credibility finding. And if we were to reverse on the adverse credibility finding and the IJ were compelled to believe the testimony, I find it impossible to believe that the IJ would then find a time bar. Where have I gone wrong on that? No. I mean, like I said, this is solely based on an adverse credibility determination. And that's all that I can base this finding on at this point, because there was no merits that were addressed below. Come full circle, if we determine that there was substantial evidence to support the adverse credibility determination, what does that do to the time bar? I believe it's, as I know this Court has precedent like previously in Ramadan, like in how it can review, I believe the adverse credibility, it doesn't change the finding based on the fact that it was incredible testimony and there was no clear merit finding. I don't think it would change. Would we then, now, this assumes we reverse adverse credibility that I'm not sure is going to happen. But if we were to reverse adverse credibility, would the appropriate thing be to remand to the IJ to reconsider on the time bar question? That is correct. And if we affirm on the credibility, do we have jurisdiction to do that? Or do we, if we're persuaded that the adverse credibility determination was correct, does that mean then we conclude that the time bar was also correct? See, that's, wow, I feel like I'm in like the long-tailed cat, a room full of rocking chairs at this point. Yeah. Perfect circle. I know. It's amazing. As far as the government stands, I mean, affirming the adverse credibility. You'll take a win anyway, I'm sure of that. I know, but it'd be, it's difficult. Like you said, it's a catch-22 at the same point. So, I mean, upholding the adverse credibility finding would mean that you necessarily are upholding the time bar. Which is not reviewable. Correct. Okay. So, if we. In hindsight. If we have, one way or the other, it seems to me we have to reach the adverse credibility finding. Correct. And once we've reached the adverse credibility finding, if we affirm the IJ on that point, we dismiss because we have no jurisdiction? Is that the drill? Well, as far as, I guess you would, you could almost have to do a split where you would have to say, okay, fine, I'm affirming the adverse credibility finding as it's supposed to here, but I'm going to have to dismiss as far as that because I don't have jurisdiction. I mean, it would be the weirdest thing I've seen, but it's an odd situation. Just use immigration law. I know. It's like taxes, right? Anything further, counsel? No. Thank you. Mr. Porter, you have reserved some time. As Judge Fletcher, I believe, correctly noted, you have to get to the credibility determination on the instant issue because even if let's he applied for withholding. Withholding has no time bar. And the adverse credibility determination is fundamental to the determination of withholding of removal. At minimum, this Court's precedent is unclear on this because I know we're putting the cart before the horse a little bit here, but I think if we're making a determination of law, whether the evidence is sufficient to determine it under 208.13a based on credible testimony, we have to get to the credibility determination before we reach the one-year issue. I would agree with the Court that if they do find him not credible, that there would be a possibility not to reach the adverse credibility or the one-year issue because at that point, there's not much substantiating. I do submit that there isn't substantial evidence supporting it. Two quick points. Again, I would really urge the Court to focus again on the exact the course of the testimony regarding the reporting times. I don't see that there's substantial evidence here. The judge made multiple mistakes on the record. He said that he said that the Petitioner had two daughters. He said all sorts of mistakes on the record, and he's jumping around. And to answer one of the points that the government raised, he didn't, his demeanor finding, it wasn't testifying from a script. He basically said, I'm looking at page 77 of the record, his counsel did stop him and tell him to listen to the question. But it says they asked him about his family members. And they said, after I was released, the neighborhood, what happened with your family members? He said, well, after I was released, the neighborhood committee was looking after me. And because being detained, so my relatives, speaking about his family friends, were trying to keep a distance from me. He was answering the question, and then they moved him along. Thank you, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision. And we will hear argument in Metropolitan Business v. Allstate.
judges: Goodwin, O'scannlain, W. Fletcher